UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| STEVE BOLIN, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   Case No. 4:18-CV-1052 NAB |
| | ) |
| ANDREW M. SAUL[1], | ) |
| Commissioner of Social Security, | ) |
| | ) |
|     Defendant. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Steve Bolin's appeal regarding the denial of disability insurance benefits under the Social Security Act. The Court has jurisdiction over the subject matter of this action under 42 U.S.C. § 405(g). The parties have consented to the exercise of authority by the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). [Doc. 8.] The Court has reviewed the parties' briefs and the entire administrative record, including the transcript and medical evidence. Based on the following, the Court will reverse the Commissioner's decision and remand this action.

### Issues for Review

Bolin presents three issues for review. First, Bolin contends that the administrative law judge ("ALJ") erred by finding that his migraine headaches and neuropathy were non-severe impairments. Second, Bolin contends that the ALJ failed to properly evaluate the opinion

---

[1] At the time this case was filed, Nancy A. Berryhill was the Acting Commissioner of Social Security. Andrew M. Saul became the Commissioner of Social Security on June 4, 2019. When a public officer ceases to hold office while an action is pending, the officer's successor is automatically substituted as a party. Fed. R. Civ. P. 25(d). Later proceedings should be in the substituted party's name and the Court may order substitution at any time. *Id.* The Court will order the Clerk of Court to substitute Andrew M. Saul for Nancy A. Berryhill in this matter.

evidence. Finally, Bolin contends that the ALJ improperly discounted his subjective pain complaints. The Commissioner asserts that the ALJ's decision is supported by substantial evidence in the record as a whole and should be affirmed.

## Standard of Review

The Social Security Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1)(A), 423(d)(1)(A).

The Social Security Administration ("SSA") uses a five-step analysis to determine whether a claimant seeking disability benefits is in fact disabled. 20 C.F.R. §§ 404.1520(a)(1), 416.920(a)(1). First, the claimant must not be engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). Second, the claimant must establish that he or she has an impairment or combination of impairments that significantly limits his or her ability to perform basic work activities and meets the durational requirements of the Act. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the appendix of the applicable regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairments do not meet or equal a listed impairment, the SSA determines the claimant's residual functional capacity ("RFC") to perform past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e).

Fourth, the claimant must establish that the impairment prevents him or her from doing past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant meets this burden, the analysis proceeds to step five. At step five, the burden shifts to the Commissioner to establish the claimant maintains the RFC to perform a significant number of jobs in the national

economy. *Singh v. Apfel,* 222 F.3d 448, 451 (8th Cir. 2000). If the claimant satisfied all of the criteria under the five-step evaluation, the ALJ will find the claimant to be disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

The standard of review is narrow. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). This Court reviews the decision of the ALJ to determine whether the decision is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find adequate support for the ALJ's decision. *Smith v. Shalala,* 31 F.3d 715, 717 (8th Cir. 1994). The Court determines whether evidence is substantial by considering evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Cox v. Barnhart*, 471 F.3d 902, 906 (8th Cir. 2006). The Court may not reverse just because substantial evidence exists that would support a contrary outcome or because the Court would have decided the case differently. *Id.* If, after reviewing the record as a whole, the Court finds it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's finding, the Commissioner's decision must be affirmed. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004).

The Court must affirm the Commissioner's decision so long as it conforms to the law and is supported by substantial evidence on the record as a whole. *Collins ex rel. Williams v. Barnhart*, 335 F.3d 726, 729 (8th Cir. 2003). "In this substantial-evidence determination, the entire administrative record is considered but the evidence is not reweighed." *Byes v. Astrue*, 687 F.3d. 913, 915 (8th Cir. 2012).

**Discussion**

**Severe Impairments**

The first issue is whether substantial evidence supports the ALJ's finding that Bolin's migraine headaches and neuropathy were not severe impairments.  After the ALJ has determined that a claimant is not engaged in substantial gainful activity, the ALJ then determines whether the claimant has a severe impairment or combination of impairments that has or is expected to last twelve months or will result in death.  20 C.F.R. §§ 404.1509, 404.1520(a)(4)(i)-(ii), 416.909, 416.920(a)(i)-(ii)[2].  A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by the claimant's statement of symptoms.  To be considered severe, an impairment must *significantly* limit a claimant's ability to do basic work activities.  *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).  "Step two [of the five-step] evaluation states that a claimant is not disabled if his impairments are not severe."  *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007) (citing *Simmons v. Massanari,* 264 F.3d 751, 754 (8th Cir. 2001)).  "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities."  *Id.* at 707.  "If the impairment would have no more than a minimal effect on the claimant's ability to work, then it does not satisfy the requirement of step two."  *Id.* (citing *Page v. Astrue,* 484 F.3d 1040, 1043 (8th Cir. 2007)).  "It is the claimant's burden to establish that his impairment or combination of impairments are severe."  *Kirby*, 500 F.3d at 707 (citing *Mittlestedt v. Apfel,* 204 F.3d 847, 852

---

[2] Many Social Security regulations were amended effective March 27, 2017.  Per 20 C.F.R. §§ 404.614, 404.1527, 416.325, 416.927.  the court will use the regulations in effect at the time that this claim was filed on January 20, 2015.

(8th Cir. 2000)). "Severity is not an onerous requirement for the claimant to meet, . . . but it is also not a toothless standard." *Kirby*, 500 F.3d at 708.

The ALJ found that Bolin had the severe impairments of degenerative disc disease, diabetes mellitus, obesity, major depressive disorder, and attention deficit hyperactivity disorder. The ALJ stated that Bolin's headaches and hearing loss were controlled with treatment and were therefore, non-severe. (Tr. 14.) The ALJ stated that Bolin's headaches and hearing impairment were considered in combination with the severe impairments. (Tr. 14.)

**Migraine Headaches**

At the administrative hearing, Bolin testified that he began having headaches when he was working at a call center. (Tr. 169.) The headaches occurred as he was looking at the screen and would last two days. (Tr. 169.) He also stated that bending over for long periods caused pain up to his neck and the onset of migraine headaches. (Tr. 172-73.) His pain medication and low or high blood sugar also causes headaches. (Tr. 173.) If he does not take Imitrex quickly enough, his headaches turn into migraines. (Tr. 172-73.) He stated that after starting Botox treatments, his headaches were reduced from 20 to 25 per month to between 7 and 10 each month. (Tr. 172.) Bolin stated that his neurologist "made things quite better for me but they're not perfect." (Tr. 172.)

The treatment record indicates that Bolin consistently reported to providers regarding his migraine headaches and received treatment for them, which eventually resulted in a consultation with a neurologist. (Tr. 498-507, 517-34, 550-61, 596-97, 624-32, 803-804, 813-14, 1045-1080.) Bolin received treatment from Dr. Mohammed Ashraf and nurse practitioner Ashley Whitley in 2015 for his migraine headaches. They prescribed Topamax and Imitrex. Bolin began treatment with neurologist Laurence Kinsella in October 2015. Dr. Kinsella diagnosed Bolin with chronic

5

daily headache, medication overuse headache, migraine without aura, and diabetic neuropathy. (Tr. 522.) At that time, Dr. Kinsella directed Bolin to initiate a headache diet and use of the medications tizanidine three times a day, Topamax twice a day, and Imitrex to 100 mg at a time. (Tr. 522.) He also directed Bolin to stop using caffeine and pain medication. (Tr. 522.) Bolin's headaches initially improved, although he noted the side effects of tingling tongue, hands, and feet and brain fog from the Topamax. (Tr. 553.) Bolin reported that he was having 5 headache days per week, estimating a 25% reduction, but no change in duration or severity. (Tr. 553) A few months later, his headaches increased due to problems with the tubes in his ears. Bolin stopped taking Topamax and began Propranolol. (Tr. 1046.) Bolin acknowledged that he knew sunshine triggered his headaches if he did not wear sunglasses. (Tr. 1046.) He noted that Imitrex was helpful, but he had to catch headaches early. (Tr. 1046.) Bolin began Botox treatment in June 2016 administered by Dr. Kinsella. (Tr. 1056-63.) After his first Botox treatment, Bolin reported a 50% reduction in headaches. (Tr. 1065.) At his third Botox treatment, Bolin reported a 75% reduction in headaches since his first Botox treatment. (Tr. 1074.)

The ALJ noted that the treatment records do not indicate that the headaches are caused by a serious illness, traumatic brain injury, aneurysm, tumor, disc disease, or sinus abnormalities. (Tr. 24.) Further, the ALJ states that the treatment records do not indicate objective findings of ongoing neurological deficits. (Tr. 24.) "Because migraines constitute a subjective complaint, objective evidence conclusively showing whether a person suffers from them is impossible to find." *Carrier v. Berryhill*, CIV-1-5086-JLV, 2017 WL 885019 at *5 (D.S.D. Mar. 6, 2017) (citing *Carlson v. Astrue*, Civil NO. 09-2547, 2010 WL 5113808 at *12 (D. Minn. Nov. 8, 2010)). "Rather than using laboratory tests looking for direct medical evidence, doctors diagnose migraines through medical signs and symptoms such as nausea, vomiting, and photophobia." *Carrier*, at *5. Bolin's

6

doctors have diagnosed him with migraine headaches and have provided ongoing treatment for them.  "An ALJ may discount a claimant's allegations if there is evidence that a claimant was a malingerer or was exaggerating symptoms for financial gain."  *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009).  There is no evidence in the record that Bolin was accused by any provider of malingering or exaggerating his symptoms.

The ALJ also noted that there was no evidence that his headaches were triggered by strenuous activity, exertion, bending, or coughing.  (Tr. 24.)  The Court notes that Bolin actually reported to Dr. Kinsella that "if he does a lot of walking or if he is bending over it will worsen." (Tr. 518.)  Bolin also reported light sensitivity and occasional nausea and vomiting."  (Tr. 518-19.)  Bolin also testified that bending over causes a migraine.  (Tr. 172-73.)

Next, the Court addresses whether the ALJ's assessment that Bolin's headaches are controlled by medication is supported by substantial evidence in the record as a whole.  The ALJ notes that Bolin reported significant improvement with his migraine headaches after his Botox treatments.  (Tr. 20-21, 24.)  The ALJ also referred to Bolin's testimony that if he took the Imitrex in time, he could avoid the onset of a migraine headache.  The significant improvement noted by the ALJ was a decrease of headaches from over approximately 30 times per month to seven times per month.  Also, Bolin testified that his diabetes was under control.  (Tr. 170.)  If an impairment can be controlled by treatment or medication, it cannot be considered disabling."  *Wildman v. Astrue*, 596 F.3d 959, 965 (8th Cir. 2010) (citing *Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004).  Therefore, the undersigned finds that the ALJ's finding that it was not a severe impairment is supported by substantial evidence in the record as a whole.

**Diabetic Neuropathy**

Bolin contends that the ALJ erred in not finding diabetic neuropathy as a severe impairment. Bolin received numerous diagnoses of diabetic neuropathy and polyneuropathy in diabetes from Dr. Mohammed Ashraf, Dr. Laurence Kinsella, George Thampy, and nurse practitioner Ashley Whitley. (Tr. 486-87, 494-501, 517-34, 550-61, 629-41, 928-800, 1117-20, 1129-1132.) Bolin also received medical treatment for the neuropathy. (Tr. 486-87, 494-501, 517-34, 550-61, 629-41, 928-800, 1117-20, 1129-1132.) Bolin testified that he had "really bad neuropathy in my legs." (Tr. 170.) Bolin also testified that he had to use a cane, because he kept losing sensation in his legs and he was falling. (Tr. 170.) He stated that during one fall he broke his insulin pump and "busted" his face." (Tr. 170-71.) He stated that a doctor told him he should get a cane. (Tr. 170.)

The ALJ mentioned the diagnoses in his summary of the evidence, but he stated, "The record does not contain evidence of electromyography study or nerve conduction studies that show findings consistent with neuropathy." (Tr. 23.) The ALJ noted that Bolin's cane was not prescribed by a doctor. The Commissioner contends that "it appears he considered diabetic neuropathy as part of that treatment." Bolin insists that the ALJ should have found that diabetic neuropathy was a severe impairment, because he testified that he kept "losing sensation" in his legs and falling. (Tr. 170.) The Court finds that the ALJ should have found that Bolin's neuropathy was a separate severe impairment. He was diagnosed as having the impairment based on physical examination from his medical providers. Bolin also experienced problems as a result of the neuropathy. "Where an ALJ errs by failing to find an impairment to be severe, such error is harmless if the ALJ finds the claimant to suffer from another severe impairment, continues in

8

the evaluation process, and considers the effects of the impairment at the other steps of the process." *DeGroot v. Berryhill*, 1:17-CV-202 ACL, 2019 WL 1316964 at *7 (E.D. Mo. March 22, 2019) (affirm); *see also Weed v. Saul*, 4:18-CV-1192 SPM, 2019 WL 4451259 at *4 (Sept. 17, 2019) (affirm); *Coleman v. Astrue*, 4:11-CV-2131 CDP, 2013 WL 665084 at *10 (Feb. 25, 2013) (reverse).  It appears that the ALJ's RFC determination took into consideration the effects of Bolin's diabetic neuropathy.  The RFC limits Bolin to sedentary work and restricts climbing to occasional use of ramps and stairs, but never ladders, ropes, or scaffolds.  The RFC also restricts Bolin from kneeling, crouching, crawling and he is restricted from any operation of foot controls, moving machinery, working at unprotected heights, and use of hazardous machinery.  Based on the foregoing, the Court finds that although the ALJ may have erred in finding the Bolin's diabetic neuropathy was not a severe impairment, the ALJ's error was harmless.

**Medical Opinion Evidence**

Next, Bolin states that the ALJ erred in his evaluation of the medical opinions of consultative examiners Dr. Thomas Spencer and Dr. Yusuf Chaudhry, non-examining state agency psychologist Dr. James Morgan, and treating nurse practitioner Susan Dawson.

Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis and prognosis, and what the claimant can still do despite his impairments and his physical or mental restrictions.  20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1). All medical opinions, whether by treating or consultative examiners are weighed based on (1) whether the provider examined the claimant; (2) whether the provider is a treating source; (3) length of treatment relationship and frequency of examination, including nature and extent of the treatment relationship; (4) supportability of opinion with medical signs, laboratory findings,

and explanation; (5) consistency with the record as a whole; (6) specialization; and (7) other factors which tend to support or contradict the opinion.  20 C.F.R. §§ 404.1527(c), 416.927(c).

"Good reasons for assigning lesser weight to the opinion of a treating source exist where the treating physician's opinions are themselves inconsistent, or where other medical assessments are supported by better or more thorough medical evidence." *Chesser v. Berryhill*, 858 F.3d 1161, 1164 (8th Cir. 2017) (internal citations omitted).  The court reviews "the record to ensure that an ALJ does not disregard evidence or ignore potential limitations, but [it is not required for] an ALJ to mechanically list and reject every possible limitation."  *McCoy v. Astrue*, 648 F.3d 605, 615 (8th Cir. 2011).

**Dr. Thomas Spencer**

On February 18, 2015, Dr. Thomas Spencer provided a psychological evaluation for Bolin to determine his eligibility for Medicaid.  (Tr. 488-91.)  Dr. Spencer diagnosed Bolin with major depressive disorder, recurrent, moderate and anxiety disorder, not otherwise specified.  (Tr. 491.)  Dr. Spencer opined that Bolin has "a mental illness, one that appears to interfere with his present ability to engage in employment suitable for his age, training, experience, and/or education."  (Tr. 491.)  He assessed Bolin's global assessment functioning ("GAF") score range of 55-60.  On the GAF scale, a score from 51 to 60 represents moderate symptoms (*e.g.,* flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (*e.g.,* few friends, conflicts with peers or co-workers).  Diagnostic and Statistical Manual of Mental Disorders 32-34 (4th ed. Text Rev. 2000) ("DSM-IV-TR").

Bolin contends that the ALJ erred, because although he mentioned Dr. Spencer's opinion, he did not assign any weight to it.  An ALJ is not required to discuss every piece of evidence submitted.  *Wildman v. Astrue*, 596 F.3d at 966 (quoting *Black v. Apfel*, 143 F.3d 383, 386 (8th

10

Cir. 1998)).  Although the ALJ did not weigh Dr. Spencer's opinion, he cited to the evidence, so the Court assumes that he considered it.  *Wildman*, 596 F.3d at 966 (given the ALJ's specific reference to findings set forth in the doctor's notes, it is highly unlikely that the ALJ did not consider and reject the doctor's statement that claimant was markedly limited).

The parties should not have to infer what weight is given to an opinion, however, a deficiency in opinion writing does not require reversal.  *Forte v. Barnhart*, 377 F.3d 892, 896 (8th Cir. 2004) (citing *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996.) ("An arguable deficiency in opinion-writing technique is not a sufficient reason for setting aside an administrative finding where the deficiency probably has no practical effect on the outcome of the case.")).  It would have been preferable for the ALJ to state what weight was given to Dr. Spencer's opinion.  As Bolin acknowledges, however, it is clear that the ALJ did not give Dr. Spencer's opinion any weight. Bolin does not provide any further argument regarding the ALJ's consideration of Dr. Spencer's opinion.  Therefore, the Court will not engage in an assessment about the substantive parts of Dr. Spencer's opinion.

**Dr. Yusuf Chaudhry**

Dr. Yusuf Chaudhry completed an internal medicine consultative examination of Bolin on March 17, 2015.  (Tr. 486-87.)  During the examination, Dr. Chaudhry found that Bolin had decreased pin prick sensation from his knees to his ankles and his lumbosacral spine showed mild spasticity of his paraspinal muscles.  (Tr. 487.)  Dr. Chaudhry diagnosed Bolin with uncontrolled diabetes mellitus, diabetic neuropathy, chronic low back syndrome, atypical chest pain, irritable bowel syndrome, and obesity.  (Tr. 487.)  The ALJ described Dr. Chaudhry's examination in detail and noted that Dr. Chaudhry's opinion did not note any work-related limitations.  (Tr. 18.)

Again, Bolin's states that ALJ erred in not assigning a weight to this opinion.  In this case, Dr. Chaudry's examination note while informative, does not address any work related limitations or limitations on activities of daily living.  Substantively, it is a treatment note.  Because Bolin does not provide argument for why Dr. Chaudry's opinion should be given a particular weight, the Court finds no error in the ALJ's assessment.

**Dr. James Morgan, State Agency Psychologist**

Then, Bolin objects to the greater weight given to state agency psychologist Dr. James Morgan.  The ALJ gave "greater" weight to Dr. Morgan's report over the opinion of Bolin's nurse practitioner Dawson.  Bolin states that Dr. Morgan's opinion was provided over a year and a half before the administrative hearing; therefore, Dr. Morgan did not review his mental health records from Dawson or counselor Jeffrey Best.  Bolin asserts that it was improper to give greater weight to a non-examining physician to formulate the RFC when the physician's findings were not based upon the full record.

"Administrative law judges are not bound by any findings made by State agency medical or psychological consultants or other program physicians or psychologists."  20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i).  "State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation."   20   C.F.R.   §§ 404.1527(e)(2)(i),   416.927(e)(2)(i).   "Therefore, administrative law judges must consider findings and other opinions of State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists as opinion evidence, except for the ultimate determination about whether a claimant is disabled."  *Id.*  Unless the claimant's treating source is given controlling weight, the administrative

law judge must explain the weight given to the opinions of a state agency psychological consultant. *Id.* "A single evaluation by a nontreating psychologist is generally not entitled to controlling weight." *Teague v. Astrue*, 638 F.3d 611, 615 (8th Cir. 2011). "The ALJ is not required to accept every opinion given by a consultative examiner, however, but must weigh all the evidence in the record." *Mabry*, 815 F.3d at 391. "The interpretation of physicians' findings is a factual matter left to the ALJ's authority." *Id.*

Opinions of non-examining sources are generally given less weight than those of examining sources. *Wildman*, 596 F.3d at 967. When evaluating the non-examining sources opinion, the ALJ should evaluate the degree to which the opinion considers all of the pertinent evidence in the claim, including the opinions of treating and other examining sources. *Wildman*, 596 F.3d at 967. "The opinions of non-treating practitioners who have attempted to evaluate the claimant without examination do not normally constitute substantial evidence on the record as a whole." *Shontos v. Barnhart*, 328 F.3d 418, 427 (8th Cir. 2003).

Dr. Morgan's opinion is dated May 21, 2015, which is before Bolin began treatment with nurse practitioner Dawson and counseling with counselor Best.  (Tr. 205-11, 583-619.)  Dr. Morgan did not examine Bolin and primarily relied on Dr. Spencer' s consultative examination and an examination five years earlier by Dr. Robin Dalske in 2010.  (Tr. 206.)  Dr. Morgan noted that Bolin had not sought outpatient counseling.  (Tr. 206.)  Dr. Morgan then opined that Bolin was moderately limited in the ability to understand, remember, and carry out detailed instruction, maintain attention and concentration for extended periods, and ability to accept instructions and respond appropriately to criticism from supervisors. (Tr. 2010-11.)  The ALJ stated that "Greater evidentiary weight is given to the findings and opinion of Dr. Morgan because he is a medical expert who reviewed the record in its entirety, and his findings and opinions are consistent with

13

the record as a whole.  Lastly, Dr. Morgan's findings and opinions support the findings within [RFC] as stated above …." (Tr. 22.)  At the time of the ALJ's opinion, Dr. Morgan had not reviewed the record in its entirety.  Further, the RFC is based on the evidence in the record rather than the opinion evidence supporting an RFC already developed by the ALJ.  Therefore, the ALJ should not have given Dr. Morgan's opinion greater weight than any other opinion, because Dr. Morgan had not reviewed any evidence from treating sources regarding Bolin's mental impairments.

### Nurse Practitioner Susan Dawson

Bolin next states that the ALJ should have given greater weight to the opinion of nurse practitioner Dawson.  She treated Bolin between August 2015 and November 2016. (Tr. 583-88, 793-801.)  She diagnosed him with major depressive disorder, recurrent, moderate, persistent insomnia, history of ADHD, alcohol and cannabis abuse history, and learning disorder.  Her treatment notes regularly indicated a euthymic mood and affect, fair insight and judgment, and expressions of depression.

Dawson completed a Mental Residual Functional Capacity Questionnaire on January 24, 2017. (Tr. 833-39.)  The Questionnaire was also signed by Dr. Jos, Dawson's supervising doctor[3]. (Tr. 839.)  She noted his medication for his mental impairments and that he had no side effects from them. (Tr. 833.)  Dawson stated that due to Bolin's "slow thinking, he has some difficulty in relating and understanding work issues."  She noted that his symptoms included anhedonia or pervasive loss of interest in almost all activities, appetite disturbance with weight change, decreased energy, thoughts of suicide, blunt, flat or inappropriate affect, feelings of guilt or worthlessness, poverty of content of speech, psychomotor agitation or retardation, pressures of

---

[3] The Court will evaluate Dawson's opinion under the treatment team standard.  *See Blackburn v. Colvin*, 761 F.3d 853, 859-60 (8th Cir. 2014) (citing *Shontos*, 328 F.3d at 426-27).

speech, easy distractibility, autonomic hyperactivity at times, and memory impairment. (Tr. 834.) She opined that he was seriously limited, but not precluded from maintaining attention for two hour segment, performing at a consistent pace without an unreasonable number and length of rest periods, and using public transportation. (Tr. 835.) She opined that Bolin was unable to meet competitive standards in 16 out of 25 categories, including remembering work-like procedures and understanding, remembering, and carrying out very short and simple instructions. (Tr. 835.) She also opined that Bolin had no useful ability to function in working in coordination with or in proximity to others without being unduly distracted, accept instructions and respond appropriately to criticism from supervisors, deal with normal work stress, understand and remember detailed instructions, and carry out detailed instructions. (Tr. 835-36.) She further opined that "his difficulty in learning and inability to focus makes it difficult to perform normal work processes." (Tr. 836.) She wrote that Bolin's "exacerbations can cause inability to interact and behave appropriately with employers or coworkers." Dawson indicated that Bolin would be absent from work more than four days per month due to his impairments or treatment. (Tr. 837.)

The ALJ gave "little evidentiary weight" to Dawson's opinion. (Tr. 22.) The ALJ devoted a significant portion of his opinion to Dawson's opinion in the Questionnaire. (Tr. 21-22.) The ALJ stated that the limitations in functioning "appear to be exaggerated and inconsistent with the clinical signs and findings within the record" including Dawson's own treatment notes. The ALJ also noted that Dawson assigned Bolin a GAF score of 65, which indicates mild limitations in functioning.

Based on the foregoing, the undersigned finds that the ALJ's evaluation of Dawson's opinion evidence is supported by substantial evidence in the record as a whole. Neither Dawson's treatment notes nor other evidence in the record supports the significant limitations outlined in

15

Dawson's opinion. Bolin asserts that the ALJ failed to address all of the factors used to assess opinions, but the ALJ's failure to do so is not reversible error. *See Nishke v. Astrue*, 878 F.Supp.2d 958, 984 (E.D. Mo. 2012) (ALJ's failure to perform factor-by-factor analysis of opinion evidence in written opinion not erroneous).

Because Dr. Morgan and nurse practitioner Dawson's opinions are not supported by substantial evidence, the Court will reverse and remand this action for the ALJ to have a medical expert or consultative examiner review the entire mental health record and provide an opinion on Bolin's work related limitations. *See Shontos*, 328 F.3d at 427. Then, the ALJ can formulate a new RFC determination. Because the Court is remanding this action, the ALJ can review Bolin's arguments regarding pain on remand.

## Conclusion

The Court finds that the Commissioner's decision is not supported by substantial evidence on the record as a whole. The Court is aware that upon remand, the ALJ's decision as to non-disability may not change after addressing the deficiencies noted herein, but the determination is one the Commissioner must make in the first instance. *See Buckner v. Apfel*, 213 F.3d 1006, 1011 (8th Cir. 2000) (when a claimant appeals from the Commissioner's denial of benefits and the denial is improper, out of an abundant deference to the ALJ, the Court remands the case for further administrative proceedings); *Leeper v. Colvin*, No. 4:13-CV-367 ACL, 2014 WL 4713280 at *11 (E.D. Mo. Sept. 22, 2014) (ALJ duty to make disability determination).

Accordingly,

**IT IS HEREBY ORDERED** that the relief Plaintiff seeks in his Complaint and Brief in Support of Plaintiff's Complaint is **GRANTED in part and DENIED in part**. [Docs. 1, 20.]

16

**IT IS FURTHER ORDERED** that the ALJ's decision of September 19, 2017 is **REVERSED** and **REMANDED**.  The ALJ shall order a consultative examination of Bolin or consult a medical expert who can review the entire mental health treatment history and provide an opinion on work related limitations.

**IT IS FURTHER ORDERED** that the Clerk of Court shall substitute Andrew M. Saul for Nancy A. Berryhill in the court record of this case.

NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE

Dated this 29th day of May, 2020.